# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 04-1076


OUPAC, INC.

VERSUS

JOSEPH BERNARD, JR.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 01-3419
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE
**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Billie Colombaro Woodard, Elizabeth A. Pickett, and John B. Scofield[*], Judges.

**REVERSED AND RENDERED.**

**Belinda A. Matthews**
**Attorney at Law**
**1859 N. Tallowwood Street**
**Lake Charles, LA 70605**
**(337) 474-5183**
**Counsel for Defendant/Appellee:**
    **J.B. Construction Co.**

**Gregory Joseph Spicer**
**Attorney at Law**
**306 Iris St.**
**Lake Charles, LA 70601**
**(337) 436-1463**
**Counsel for Plaintiff/Appellant:**
    **Oupac, Inc.**

---

[*]John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as judge pro tempore.

**PICKETT, J.**

<u>FACTS</u>

Joseph Bernard, Jr., defaulted on a loan that he received from Oupac, Inc. d/b/a Oupac Financial Services (Oupac). On August 10, 2001, judgment was rendered against him in favor of Oupac for $8,454.96, plus interest and attorney's fees. On December 14, 2001, Mr. Bernard failed to appear at a judgment debtor examination and a civil bench warrant was issued for his arrest.

Joseph Bernard, Jr., is employed by J. B. Construction Company which is owned by his father, Joseph Bernard, Sr. On July 1, 2002, Oupac filed a Petition for Garnishment making J. B. Construction garnishee and propounded garnishment interrogatories. J. B. Construction was served with the garnishment interrogatories on July 23, 2002. J. B. Construction failed to answer the interrogatories. On October 8, 2002, Oupac sent a certified letter, as a courtesy, to J. B. Construction requesting that it answer the interrogatories within ten days. The letter informed J. B. Construction that if it did not answer within ten days, Oupac would file a Judgment *Pro Confesso* against the company, thereby making it liable for Joseph Bertrand, Jr.'s debt. J. B. Construction received the letter on October 9, 2002 and again failed to answer the interrogatories. Thirteen days later, on October 22, 2002, Oupac filed a Motion and Rule for Judgment *Pro Confesso* against J. B. Construction. It was at that time J. B. Construction apparently sought advice from legal counsel and answered the interrogatories. They were not, however, timely answered.

The motion was heard on February 6, 2003. The trial court determined that J.B. Construction should have been garnishing $52.75 a week from Mr. Bernard's salary and that the garnishment should have started in August 2002, the date that J.B. Construction received service of the interrogatories. The trial court estimated that

twenty-six weeks had passed since that date and $1477.00 represented the amount that should have been garnished as of the date of the hearing. The trial court refused, however, to grant the judgment and took the matter under advisement. It ordered J.B. Construction to pay the $1,477.00 it had calculated was due as well as court costs and attorney fees and to begin garnishing Mr. Bernard's check weekly. The trial court advised the parties that it was "[H]olding this over his [Bernard, Sr.'s] head" specifically advising Mr. Bernard, Sr. that should his son quit working the court could "[I]ssue this judgment against you [J.B. Construction] and make you pay this money."

On March 27, 2003, Joseph Bernard, Jr. filed a Chapter 7 bankruptcy proceeding. In accordance with the trial court's order, J. B. Construction sent Oupac $211.00 representing the garnishment for the month of March. In April, however, it did not garnish his paycheck having receiving notice from the U.S. Bankruptcy Court, that it could no longer withhold the garnishment.

Oupac filed a Motion to Reset the Judgment *Pro Confesso*. The motion was heard on November 12, 2003. The trial court ruled in favor of J. B. Construction, denying Oupac's Motion for Judgment *Pro Confesso*. The trial court also denied Oupac's motion for additional attorney's fees and court costs.

It is from this judgment that the plaintiff appeals.

### ASSIGNMENTS OF ERROR

Oupac asserts two assignments of error:

1) The trial court erred in denying Oupac's Motion for Judgment *Pro Confesso* against J. B. Construction Company, and thereby refusing to hold J. B. Construction Company liable for the entire unpaid judgment against Joseph Bernard, Jr.

2) The trial court erred by failing to award additional attorney's fees and court costs as a result of Oupac, Inc. having to bring the Rule for Judgment *Pro Confesso*.

2

## DISCUSSION

In the appellant's first assignment of error, it argues the trial court erred in denying Oupac's Motion for Judgment *Pro Confesso* against J. B. Construction.

Garnishment proceedings generally are governed by La.Code Civ.P. arts. 2411-2417. Louisiana Code of Civil Procedure Article 2413 provides, in pertinent part:

> A.  If the garnishee fails to answer within the delay provided by Article 2412, the judgment creditor may proceed by contradictory motion against the garnishee for the amount of the unpaid judgment, with interest and costs.  The *failure of the garnishee to answer prior to the filing of such a contradictory motion is prima facie proof that he has property of or is indebted to the judgment debtor to the extent of the judgment, interest, and costs. . . .*
>
> B.  Judgment *shall* be rendered against the garnishee on trial of the motion unless he proves that he had no property of and was not indebted to the judgment debtor.  If on the trial of such motion, the *garnishee proves the amount of such property or indebtedness, the judgment against the garnishee shall be limited to the delivery of the property or payment of the indebtedness*, as provided in Article 2415.
>
> C.  Regardless of the decision on the contradictory motion, the court shall render judgment against the garnishee for the costs and a  *reasonable attorney fee* for the motion.

(Emphasis added.)

Louisiana Code of Civil Procedure Article 2412(D) provides, "The garnishee shall file his sworn answers to the interrogatories within fifteen days from the date of service made pursuant to this Article."

In the instant matter, the appellant stated to the court that service was made on the garnishee on July 23, 2002.  The appellee represented to the court that service was actually made on August 1, 2002.  The service receipt does not appear in the record before us.  Even if, however, we accept the appellee's date of August 1, 2002 as the date of service, at least sixty-nine days lapsed before the appellant sent the appellee

3

a courtesy letter on October 8, 2002, advising the appellee that if the answers were not filed within ten days a Motion for Judgment *Pro Confesso* would be filed. The appellant further advised the appellee that this would result in the garnishee being made liable for the debt. Still the appellee failed to file the answers to interrogatories. The appellant waited thirteen additional days from the appellee's receipt of that letter before actually filing a Motion and Rule for Judgment Pro Confesso. Only then did the appellee file the answers.

There is no question that the appellee/garnishee failed to answer timely and failed to answer prior to the filing of the contradictory motion. Under the clear wording of the statute, failure to file the answer prior to the filing of the contradictory motion is *prima facie* proof that he has property of or is indebted to the judgment debtor to the extent of the judgment including interest and costs. The statute is equally clear that a judgment shall be rendered against the appellee/garnishee unless he proves that he had no property of and was not indebted to the judgment debtor, in this case, Joseph Bernard, Jr.

The record before us is void of any evidence presented by the appellee/garnishee. Statements were made to the court by legal counsel regarding the judgment debtor's weekly wage. Those statements are not evidence. Statements were made by the judgment debtor's mother in way of explanation as to why the appellee didn't start garnishing his paycheck. Since those statements were not made under oath they are not evidence. The record is not clear as to whether Mrs. Bernard is even an employee of J. B. Construction. In response to the court's inquiry as to how much money the garnishee could produce immediately, after the trial court announced it was taking the matter under advisement, Joseph Bernard, Sr. stepped forward and

offered to pay the exact figure the trial court had announced was due under the garnishment proceeding, if they had properly garnished the judgment debtor's pay up to that date. The unsworn statements made by Mr. and Mrs. Bernard, Sr. cannot be considered as evidence as they were given in violation of La.Code Evid. art. 603. Louisiana Code of Evidence Article 603 provides "[b]efore testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so." *See In Re Custody of Landry,* 95-0141 (La.App. 1 Cir. 10/6/95), 662 so.2d 169. There was no evidence presented by the appellee at the second hearing on November 12, 2003.

The appellee failed to prove that he had no property of and was not indebted to the judgment debtor. The appellee further failed to prove, if he did in fact have property of the judgment debtor, the amount of such property or indebtedness. Therefore, the trial court's conclusion that J. B. Construction had paid to the appellant all that property it had in its possession that belonged to the judgment debtor is clearly wrong. The statute mandated that a judgment be rendered in favor of the appellant and the trial court failed to do so.

The appellee argues that counsel for the appellant failed to object when the trial court ordered that payment of $1,477.00 be made against the debt and, therefore, the appellant forfeits his right to a Judgment *Pro Confesso*. The appellee's argument is misplaced.

The trial court heard arguments from counsel and announced it was taking the matter "under advisement." It then proceeded to try and determine how much was owed as of that date had the appellee properly garnished the judgment debtor's

5

paycheck. The trial court again states it is taking the matter under advisement and remarks to the appellee "I'm trying to help you out to keep from getting a judgment against you." Throughout the proceeding it is clear the appellant's counsel is desirous that judgment be rendered against the appellee. He never states otherwise and did not agree to dismiss this proceeding or place it on "hold." This is acknowledged by the trial judge when he states:

> I'm not going to get a judgment against you. He's asking for $11,000.00 judgment. I'm going to spare you from that. That's going to mess up your credit with your business and everything else. But, I'm holding it over your head. I'm taking it under advisement and if things go all right, then I'm going to come back and deny it after Mr. Spicer is satisfied that he's getting his money consistently and you're doing the right thing.

Appellant's counsel never acquiesced in the actions of the trial court. The mere fact that he accepted a payment toward satisfaction of a debt due does not mean he forfeited his right to a judgment to which he was clearly entitled.

In argument, the appellee compares the matter before us to garnishment proceedings where Judgment *Pro Confesso* was sought such as in *Tower Credit, Inc. v. Carpenter*, 01-2875 (La. 9/4/02) 825 So.2d 1125. This case is clearly distinguishable from *Tower*. In *Tower*, the supreme court denied the motion for Judgment *Pro Confesso* because it found the garnishee had established that on the date she was served with the garnishment interrogatories she had no funds in her possession or under her control belonging to the judgment debtor. In the matter before us, the appellee/garnishee presented no evidence. J. B. Construction did not, therefore, carry its burden under La.Code Civ.P. art. 2413(B). Accordingly, Oupac is entitled to a Judgment *Pro Confesso*.

Oupac has received certain payments from J. B. Construction since February

6

6, 2003, which have reduced the original amount to which Oupac is entitled from $11,500.00 to $9,262.92. We render judgment in favor of Oupac and against J. B. Construction, therefore, in the full amount of $9,262.92 together with all interest due.

In the appellant's second assignment of error, it is alleged that the trial court erred by failing to award additional attorney's fees and court costs as a result of Oupac having to bring the Rule for Judgment *Pro Confesso*.

The trial court denied the appellant's request on the basis that because the trial court was ruling against Oupac, it was not entitled to attorney fees. The trial court's ruling is contrary to La.Code Civ.P. art. 2413(C) which provides that the garnishee is responsible for costs and reasonable attorney fees for the motion regardless of the outcome.

The appellant is hereby granted attorney fees in the amount of $1,000.00 pursuant to the provisions of Art. 2413(C).

## DECREE

We find the trial court erred in failing to grant the appellant's Motion for Judgment *Pro Confesso* and enter judgment in favor of the appellant and against the appellee in the amount of $9,262.92 together with interest. We further find the trial court erred in refusing to grant the request for attorney fees and grant attorney fees in the amount of $1,000.00. The costs of this appeal are assessed against the appellee, J. B. Construction.

**REVERSED AND RENDERED**.

7